CHRISTINE SAUNDERS HASKETT (Cal. Bar No. 188053)
Email: haskettcs@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Attorneys for Applicants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re APPLE INC.; APPLE RETAIL GERMANY GMBH; and APPLE SALES INTERNATIONAL,<br><br>Applicants,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Nokia Inc. Incorporated for Use in Foreign Proceedings | Civil Case No.: 3:12-mc-80013-JW<br><br>**APPLICANTS' OPPOSITION TO NOKIA, INC.'S MOTION TO QUASH** |

## TABLE OF CONTENTS


I. Introduction .......... 1

II. Background .......... 2

I. Apple's Application Meets the Requirement of § 1782 .......... 4

A. German Courts will Accept this Evidence of Motorola's FRAND Violation .......... 4

B. Nokia Concedes that the Material Sought is Not Available in the Foreign Proceeding .......... 5

C. Apple's Subpoena Facilitates the German Court Proceedings .......... 6

II. Nokia Has No Reasonable Basis to Object to Production of the Motorola-Nokia Licenses and Correspondence .......... 7

A. Nokia Overstates the Risk of Disclosure. .......... 7

B. Apple's Application Is Not Overbroad Or Unduly Burdensome. .......... 10

III. Conclusions .......... 11

# TABLE OF AUTHORITIES

## CASES

*Cryolife, Inc. v. Tenaxis Medical, Inc.*,
No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416 (N.D. Cal. Jan. 13, 2009) ..................... 5

*Cryolife, Inc. v. Tenaxis Medical, Inc.*,
No. C08-05124 HRL, 2009 WL 88348, (N.D. Cal. Jan. 13, 2009) ........................................ 6

*Ecuadorian Plaintiffs v. Chevron Corp.*,
619 F.3d 373 (5th Cir. 2010)..................................................................................................... 7

*In re Clerici*,
481 F.3d 1324 (11th Cir. 2007)................................................................................................ 11

*In re Esses*,
101 F.3d 873 (2d Cir. 1996)....................................................................................................... 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ...................................................................................................... 5, 6, 11

*Procter & Gamble*,
334 F. Supp. 2d 1112 (E.D. Wis. 2004)..................................................................................... 7

# I. INTRODUCTION

In its Motion to Quash, (Dkt. 4, "Mot."), Nokia Inc. sought to prevent Apple Inc. from obtaining indisputably relevant discovery on the ground that the German court to which Apple intends to submit the discovery lacks adequate procedures for protecting its confidentiality.

Since the filing of Nokia's Motion, with the benefit of the Court's extensions, Nokia and Apple have conferred regarding potential confidentiality protections to alleviate Nokia's concerns. As of April 4, 2012, Apple has agreed to a variety of confidentiality protections, as explained below. This has considerably narrowed the issues in dispute. Now, only two issues remain outstanding: (i) what to do if the German court refuses to clear the courtroom; and (ii) whether it is overly burdensome for Apple to seek Motorola/Nokia licensing correspondence, in addition to the licenses themselves.

As to the first issue, although Apple has agreed to use its best efforts to ensure that the German court closes its proceedings during any discussion of materials produced by Nokia pursuant to the subpoena, and although the German court has previously closed the proceedings in a nearly identical circumstance, Nokia remains concerned that its materials may be presented in open court and wants an agreement from Apple that no material will be used unless the courtroom is sealed. This issue has come up twice before, in the Southern District of California, in connection with subpoenas served by Apple on other parties stemming from the same German litigation. In both cases, the court rejected arguments similar to Nokia's. *See* Order Denying Ex Parte Motion to Quash 1782 Subpoena, Case No. 12-CV-147-LAB (POR), Dkt. No. 9 (S.D. Cal., February 2, 2012) ("Qualcomm Order"); Order Granting Ex Parte Application For Order Pursuant To 28 U.S.C. § 1782, Case No. 12cv179-LAB (MDD), Dkt. No. 8 (S.D. Cal., February 28, 2012) ("LG Order"). In the Qualcomm Order, the court held "[t]he Court does not find Motorola's argument regarding confidentiality compelling, especially in light of Apple's willingness to enter into a confidentiality agreement with Motorola." *Id.* at 1. For the same reason, the Court should reject Nokia's arguments in this case.

The discovery Apple seeks from Nokia is vital to Apple's defense against Motorola's allegations in Germany. In particular, Apple seeks documents showing that Motorola has

violated its obligation to provide Apple a license on fair, reasonable, and non-discriminatory (FRAND) terms because Motorola has entered into license agreements with Nokia, an Apple competitor, on terms more favorable than those it has offered to Apple. Nokia's Motion to Quash is designed to prevent this fact from being established in Germany, and as such, should be denied.

Nokia understates the significant confidentiality protections provided by the German court, and further ignores the additional steps that Apple has taken and is willing to take to prevent the public disclosure of confidential information in Germany. In fact, Motorola and Apple have successfully introduced confidential materials in the German proceedings while maintaining their confidentiality. Indeed, although Motorola raised these same concerns with respect to the materials produced by Qualcomm pursuant to the Southern District's order, those materials were discussed in the German court on February 3, 2012, and the proceedings were closed to the public as requested by Apple. Haskett Decl. ¶ 4. Nokia's Motion to Quash should therefore be denied.

As to the second issue, Apple is willing to agree to limitations on Nokia's search for relevant correspondence that minimize any burdens imposed on Nokia. In particular, Apple is willing to limit the search for responsive documents to correspondence to or from Motorola email addresses by five people most likely to have relevant correspondence, plus a search of any centralized repositories likely to contain relevant correspondence. Additionally, Apple is willing to consider other limitations that would ease Nokia's burden while still providing the records of negotiations that are highly relevant to Apple's FRAND defenses.

## II. BACKGROUND

Motorola has filed several patent infringement lawsuits against Apple in district courts in the United States, and in courts in Germany. Haskett Decl. ¶ 2. In Germany, Motorola alleges that Apple's iPhone and iPad products infringe patents that, according to Motorola, cover devices operating on cellular networks. Haskett Decl. ¶ 3.

Motorola has entered into commitments with standards-setting bodies in which it has agreed to license its standards-essential patents, including the patents it has asserted in Germany, on FRAND terms. Haskett Decl. ¶ 5. The terms Motorola has demanded from Apple do not

meet this requirement because, among other reasons, Motorola has offered more generous terms to Apple's competitors, including Nokia. Apple wishes to submit the materials that are the subject of its subpoena to Nokia in order to establish this fact in the German proceedings. Haskett Decl. ¶ 6. To that end, Apple filed an Application in this Court to take discovery for use in a foreign proceeding, under 28 U.S.C. § 1782.

Apple served Nokia with a copy of the Application soon after filing it with the Court. Thereafter, Apple's counsel had a number of conversations with Nokia's counsel in which Apple offered to enter into agreements to protect the confidentiality of Nokia's documents.

As discussed above, Nokia and Apple have engaged in negotiations regarding potential confidentiality protections and have agreed to stipulate to an order that:

- Apple's in-house counsel and other Apple personnel shall not be permitted access to the documents in question;
- Apple shall not permit access to the documents in question by anyone except (a) German court personnel; (b) qualified retained experts as defined below; and (c) qualified Apple outside counsel representing Apple in the pending German litigation who are under agreed-to, enforceable confidentiality obligations in the German litigation, and who need to see this Nokia confidential information for purposes of putting on Apple's defense in the pending German litigation;
- "Qualified retained experts" as used above means retained experts who are qualified in advance with an opportunity for Nokia to object;
- Apple will use its best efforts, including stipulating and requesting the German court to close the courtroom during those portions of hearings when confidential information is to be discussed, to ensure that Nokia confidential information will not be made public;
- Any attempt by a party or third party to the German proceedings to access any such Nokia confidential information that was in fact used in the record of those proceedings will be made known to Nokia and its counsel in sufficient time to allow Nokia to object, with the cooperation of the parties in the proceeding, and to

have such objection timely resolved by the German court to ensure adequate protections remain in place; and

- Apple will give Nokia advance notice of any hearings at which its confidential information may be used and an opportunity to attend, so that Nokia may (in addition to Apple) advocate that the courtroom be sealed.

In emails between Apple's counsel and Nokia's counsel, Nokia agreed that these procedures were sufficient with only one additional condition: that Apple not use the produced materials during hearings in the German court if the court, despite Apple's requests, refuses to close the courtroom to the public. Apple cannot guarantee what the German court will do, and can only commit to using its best efforts to seek closure of the German proceedings and to provide Nokia with an opportunity to attend the hearings. Moreover, as explained below, Nokia's concern about the unlikely possibility that the German court will refuse to close the proceedings is not sufficient reason to quash the subpoena. Regardless of whether the proceedings are closed, written submissions to the court are not available to the public. *See* Kreye Decl. ¶ 9. Additionally, the German court has already shows a willingness to close its proceedings during discussion of the same types of materials sought by Apple's subpoena. *See* Haskett Decl. ¶ 4.

## I. APPLE'S APPLICATION MEETS THE REQUIREMENT OF § 1782

As explained in Apple's Ex Parte Application, Apple has met all of the requirements for the issuance of an order under § 1782. Nokia cites inapposite cases to contend that Apple's Application is an attempt to circumvent German procedures. On the contrary, as recognized recently by the United States District Court for the Southern District of California with respect to the Qualcomm and LG MobileComm applications, this is precisely the situation for which §1782 is designed.

### A. German Courts will Accept this Evidence of Motorola's FRAND Violation

First, Nokia contends that Apple has not shown whether the German courts would be willing to accept the evidence it seeks from Nokia. On the contrary, Apple's application

explained that the evidence would be used to establish unfair competition, license-based, or antitrust-related defenses such as the FRAND defense, and explained that German courts have previously admitted evidence in patent infringement cases that was obtained pursuant to §1782 Applications granted by this Court. *See* Application, Dkt. 1, at 4-5 (citing *Cryolife, Inc. v. Tenaxis Medical, Inc.*, No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416, at *1, 5 (N.D. Cal. Jan. 13, 2009) (permitting discovery for use in patent infringement suit pending in "Dusseldorf Regional Court in Germany")).

Although Nokia's brief seeks to question "whether this evidence, if collected would even be admissible for the proceedings at issue," it provides no reason to doubt that the evidence would be admitted in German court. Even Nokia's German attorney declarant, Boris Kreye, does not provide any reason to question whether the evidence would be admissible in Germany. *See* Kreye Decl., *passim*. Indeed, on February 3, the Mannheim District Court allowed into evidence a license and amended versions of the license between Motorola and Qualcomm, obtained pursuant to Apple's §1782 Application. Haskett Decl. ¶ 4. Accordingly, past experience in this case and in the *Cryolife* case demonstrate that German courts will admit the evidence sought, and Nokia provides no reason to doubt that the same will be true in this case.

**B. Nokia Concedes that the Material Sought is Not Available in the Foreign Proceeding**

Nokia misinterprets the requirements for a §1782 Application when it argues that Apple must "show that the material sought is not all available from Motorola." Mot. at 7. Not surprisingly, Nokia provides no citation for this requirement. The considerations for granting a § 1782 Application are set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244 (2004):

> (1) whether the material sought is within the foreign tribunal' s jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

542 U.S. at 264-65. There is no requirement to show that the material is not available from some

other entity, whether or not one of their affiliates is a party in the foreign proceedings.

As explained in Apple's Application, Dkt. 1, Apple has met the *Intel* requirements. In particular, as Nokia concedes, the material sought is not accessible absent Section 1782 aid, because Germany does not provide for U.S.-style discovery of documents from opposing parties in litigation. *See* Mot. at 8; Kreye Decl. ¶¶ 4-5.[1] Additionally, as explained above, the German courts have shown that they are receptive to the materials sought, as they previously admitted the Qualcomm licenses into evidence. Haskett Decl. ¶ 4. The request is not an "attempt to circumvent" any restrictions on German proof gathering. As discussed below, Germany does not "restrict" the collection of licensing evidence. While Germany does not provide for discovery and thus does not *facilitate* collection of license evidence, Nokia provides no evidence that German courts *restrict* such evidence. Indeed, the opposite is true: German courts have welcomed such evidence in these proceedings. *Id.* Finally, Nokia cannot argue that the subpoena, which is narrowly tailored to seek only a small number of licenses, is unduly intrusive or burdensome.

### C. Apple's Subpoena Facilitates the German Court Proceedings

Nokia further argues that Apple is attempting to circumvent Germany's procedures by seeking to gather evidence even though German procedure does not provide for discovery. Mot. at 7-8. If Nokia's argument were to be accepted, then no §1782 Application could ever be granted for materials to be used in Germany, since German courts have no provisions for discovery. The sole case that Nokia cites for this proposition, however, disproves Nokia's argument. In *Cryolife, Inc. v. Tenaxis Medical, Inc.*, this Court recognized that German courts have no provisions for compelling discovery responses, and yet granted the §1782 Application. *See* No. C08-05124 HRL, 2009 WL 88348, *5-6 (N.D. Cal. Jan. 13, 2009).

[1] Notably, in all of the cases that Nokia cites for its contention that Apple must show that the materials are not available from Motorola, the courts *granted* the §1782 Applications.

Moreover, in order to show that the § 1782 subpoena is an attempt to "circumvent foreign proof-gathering restrictions," Nokia would have to establish that the German court would *reject* the licenses sought by the subpoena. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (requiring "clear directive from the Ecuadorian court that it would reject evidence produced in the United States" (internal quotations omitted)); *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782 should a district court refrain from granting the assistance offered by the act.") (emphasis in original); *Procter & Gamble*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) (holding that "to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States").

Nokia has produced no evidence that the German court would reject the evidence sought by the subpoena. In fact, the opposite is true: this same court has already admitted similar licenses obtained by Apple pursuant to a § 1782 subpoena. Haskett Decl. ¶ 4. Accordingly, Nokia cannot establish that the subpoena is an attempt to circumvent the German court's procedures.

## II. NOKIA HAS NO REASONABLE BASIS TO OBJECT TO PRODUCTION OF THE MOTOROLA-NOKIA LICENSES AND CORRESPONDENCE

### A. Nokia Overstates the Risk of Disclosure.

As the United States District Court for the Southern District of California found with respect to the Qualcomm and LG MobileComm Application, Nokia's concerns regarding confidentiality are not compelling. *See* 12-CV-147-LAB (POR), Dkt. No. 9 (S.D. Cal., February 2, 2012); Order Granting Ex Parte Application For Order Pursuant To 28 U.S.C. § 1782, Case No. 12cv179-LAB (MDD), Dkt. No. 8 (S.D. Cal., February 28, 2012).

Indeed, Nokia cannot credibly argue that confidential material it produces will receive no protection if submitted in the German litigation. Nokia admits that under German law, "Documents and other evidence that a party submits to the court are kept in the court file. Under normal circumstances, the contents of a court file are not publicly accessible…." Kreye Decl. ¶ 9.

Thus, to the extent that the Nokia materials are incorporated into briefs or other written submissions to the German court, they will not be to the public absent special circumstances.

Nokia argues that the protections provided by the German courts are inadequate because there are two exceptions to the rule of confidentiality. The first is that confidential materials may become public when they are actually discussed in a hearing attended by individuals who are not parties. Kreye Decl. ¶¶ 10-11. The second is that confidential material may become available to additional parties that join the proceedings by intervening. Kreye Decl. ¶ 12. Neither exception is likely to result in disclosure of sensitive material in this case.

First, Nokia does not dispute that hearings can be closed to the public when "confidential information or trade secrets need to be discussed and their public disclosure would negatively impact their non-party proprietor." Kreye Decl. ¶ 11. Apple has consistently communicated to Nokia that it is willing to request that hearings involving sensitive information be closed. Indeed, on February 3, 2012, Apple requested that the German court close the proceedings during discussion of the materials produced by Qualcomm pursuant to this Court's order granting discovery under § 1782. Haskett Decl. ¶ 4. The German court *did* close the proceedings in that instance, and Motorola provides no reason why it would not do so again. *Id.* Consistent with this past practice, Apple will request closure of the courtroom during discussion of materials produced by Nokia pursuant to Apple's subpoena.

Second, Apple has also agreed that Apple in-house counsel and other party representatives should not have access to confidential material and should leave the courtroom during the presentation of that material. The parties can abide by that agreement regardless of whether the Court orders the courtroom closed to the public in general.

Finally, the German court provides adequate protection for confidential information through its default rule of the confidentiality of submissions, and the parties have demonstrated previously the ability to address confidentiality issues within the framework of German law. Nokia's professed concern about the confidentiality of its licenses is unfounded. As the Southern District did with respect to the related Qualcomm and LG MobileComm Applications, this Court should reject Nokia's arguments regarding confidentiality and grant Apple's Ex Parte

Application. *See* Case No. 12-CV-147-LAB (POR), Dkt. No. 9 (S.D. Cal., February 2, 2012); Case No. 12cv179-LAB (MDD), Dkt. No. 8 (S.D. Cal., February 28, 2012).

Additionally, Apple has tried, repeatedly, to convince Nokia to enter into a confidentiality agreement applicable to the German proceedings, to no avail. Even now, Apple remains willing to enter into such an agreement that would provide that:

- Apple's in-house counsel and other personnel shall not be permitted access to the documents in question;
- Apple shall not permit access to the documents in question by anyone except (a) German court personnel; (b) qualified retained experts as defined below; and (c) qualified Apple outside counsel representing Apple in the pending German litigation who are under agreed-to, enforceable confidentiality obligations in the German litigation, and who need to see this Nokia confidential information for purposes of putting on Apple's defense in the pending German litigation;
- "Qualified retained experts" as used above means retained experts who are qualified in advance with an opportunity for Nokia to object;
- Apple will use its best efforts, including stipulating and requesting the German court to close the courtroom during those portions of hearings when confidential information is to be discussed, to ensure that Nokia confidential information will not be made public;
- Any attempt by a party or third party to the German proceedings to access any such Nokia confidential information that was in fact used in the record of those proceedings will be made known to Nokia and its counsel in sufficient time to allow Nokia to object, with the cooperation of the parties in the proceeding, and to have such objection timely resolved by the German court to ensure adequate protections remain in place; and
- Apple will give Nokia advance notice of any hearings at which its confidential information may be used and an opportunity to attend.

The principal addition Nokia seeks is an guarantee that, if the German court refuses to close the courtroom, Apple will not raise any Nokia confidential information. Though Apple will do everything in its power to prevent that from happening, if it comes to it, such a restriction would severely prejudice Apple. To provide one illustrative example: Apple expects that the German court will appoint a neutral expert to assist the court at arriving at a judgment concerning whether Motorola has offered Apple FRAND licensing terms. That expert will submit a written report and will then appear for examination and cross-examination at the hearing. Foreclosing Apple's ability to challenge that expert's interpretation of Nokia confidential information would be significantly prejudicial to Apple.[2]

In light of the history of Apple's attempts to reach agreement with Nokia on a confidentiality agreement, as well as Apple's continued willingness to do so, Nokia has no basis for opposing Apple's subpoena. As explained above, Nokia's only remaining concern appears to be the unlikely possibility that the German court will refuse to close its proceedings during consideration of the materials sought in the subpoena. As the German court has already shown a willingness to close the proceedings during such discussions, and as Apple has offered to use its best efforts to ensure the court is closed again and to notify Nokia in advance, this concern should not stand in the way of legitimate discovery.

**B. Apple's Application Is Not Overbroad Or Unduly Burdensome.**

The second dispute between the parties concerns the scope of Apple's application. Nokia contends it is reasonable for Apple to seek only the Motorola/Nokia licenses themselves; Apple contends it is reasonable to seek also a limited volume of correspondence between the parties concerning these licenses. Apple appreciates that Nokia is a third party and is therefore willing to cabin its requests as follows:

---

[2] It is likely for this reason that a "no seal, no use" restriction is not a standard part of protective orders. Indeed, Nokia's counsel in another matter, during the pendency of this motion to quash, has sought Apple's consent to produce similarly confidential information (an Apple/Nokia agreement) under the terms of a protective order that contain no restriction on the use of such information in open court. *See* Haskett Decl. ¶ 7, Ex. A (Letter from Nokia to Apple).

- Nokia would agree to search the email and electronic files of only the five people most likely to have correspondence concerning the Motorola/Nokia licenses, searching only for correspondence to or from email addresses with a Motorola domain name; and
- Nokia would also search any centralized physical or electronic repositories whose principal purposes include the retention of this sort of correspondence (e.g., master licensing files).

If even these measures are insufficient to minimize Nokia's burden, Apple remains willing to consider further reasonable restrictions on this search. Accordingly, if the Court is inclined to find the request overly burdensome even in light of the above measures, the Court could impose further appropriate restrictions while still allowing Apple to obtain the negotiation records that are highly relevant to its FRAND defenses. *See, e.g. Intel Corp.*, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed"); *cf. In re Clerici*, 481 F.3d 1324, 1335 (11th Cir. 2007) (declining to address the merits of a §1782 subpoena respondent's "unduly intrusive argument" because the respondent failed raise the issue in its moving papers and instead, like Nokia, "chose to appeal the grant of any discovery whatsoever").

## III. CONCLUSIONS

For the foregoing reasons, the Court should reject Nokia's Motion to Quash.

DATED: April 5, 2012

By: /s/ *Christine Saunders Haskett*

Christine Saunders Haskett
Attorneys for Applicants

**Certificate of Service**

I hereby certify that a true and correct copy of Applicants' Opposition to Nokia Inc.'s Motion to Quash has been forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure and Civil L.R. 5-6 on this 5th day of April 2012.

DATED: April 5, 2012

By: /s/ *Christine Saunders Haskett*
Christine Saunders Haskett